238118-06

ORIGINAL-WHITE
DUPLICATE-YELLOW
TRIPLICATE-PINK

RECEIPT FOR PAYMENT
UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF NEW YORK

E 649539

RECEIVED FROM

Fund
| 6855XX | Deposit Funds |
| 604700 | Registry Funds |
| | General and Special Funds |
| 508800 | Immigration Fees |
| 085000 | Attorney Admission Fees |
| 086900 | Filing Fees |
| 322340 | Sale of Publications |
| 322350 | Copy Fees |
| 322360 | Miscellaneous Fees |
| 143500 | Interest |
| 322380 | Recoveries of Court Costs |
| 322386 | Restitution to U.S. Government |
| 121000 | Conscience Fund |
| 129900 | Gifts |
| 504100 | Crime Victims Fund |
| 613300 | Unclaimed Monies |
| 510000 | Civil Filing Fee (%) |
| 510100 | Registry Fee |

DATE:                    20

Cash | Check | M.O. | Credit

Checks and drafts are accepted subject to collection and full credit will only be given when the check or draft has been accepted by the financial institution on which it was drawn.

DEPUTY CLERK

DATE/TIME: 5/1/2008 2:11:09 PM
CASHIER ID: LATECIA
STATION: 01
COMPLAINT 4/06
086900          $50.
510000          $190.00
08-400          $106.00

$250.00

$350.00

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |
|---|---|---|

KARA GARZA and ELISEO GARZA,

**SUMMONS IN A CIVIL ACTION**

V.

BAUSCH & LOMB INCORPORATED

**JUDGE CROTTY**

CASE NUMBER:

**'08 CIV 4151**

TO: (Name and address of Defendant)

> BAUSCH & LOMB INCORPORATED
> One Bausch & Lomb Place
> Rochester, NY 14604-2701

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

an answer to the complaint which is served on you with this summons, within _____ twenty (20) _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**

MAY 0 1 2008

CLERK                                                    DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                    Date                    *Signature of Server*

_____
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

JS 44C/SDNY
REV. 12/2005

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

MAY 01 2008

| PLAINTIFFS KARA GARZA and ELISEO GARZA, | DEFENDANTS BAUSCH & LOMB INCORPORATED |
|---|---|

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Finkelstein & Partners, LLP, 436 Robinson Avenue, Newburgh, NY 12550 (845) 562-0203 | |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

. 28 USC Section 132 based upon diversity of citizenship and the amount of damages exceeds the amount of $75,000.00 exclusive of interests and costs. This is an action to recover damages for personal injury by the cause of the prescription drug Renu.

Has this or a similar case been previously filed in SDNY at any time? No ☒ Yes? ☐   Judge Previously Assigned

If yes, was this case Vol.☐ Invol. ☐ Dismissed. No☐ Yes ☐   If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*          NATURE OF SUIT

ACTIONS UNDER STATUTES

**TORTS**

**CONTRACT**
[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[ ] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**PERSONAL INJURY**
[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**
[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[X] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**
[ ] 610 AGRICULTURE
[ ] 620 FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

**LABOR**
[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

**BANKRUPTCY**
[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**
[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

**SOCIAL SECURITY**
[ ] 861 MIA (1395FF)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC (405(g))
[ ] 863 DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
[ ] 870 TAXES
[ ] 871 IRS-THIRD PARTY 20 USC 7609

**OTHER STATUTES**
[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE/ICC RATES/ETC
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/COMMODITIES/EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 891 AGRICULTURE ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES
[ ] 890 OTHER STATUTORY ACTIONS

**ACTIONS UNDER STATUTES**

**REAL PROPERTY**
[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 246 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**CIVIL RIGHTS**
[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 440 OTHER CIVIL RIGHTS

**PRISONER PETITIONS**
[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

---

_Check if demanded in complaint:_

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 100,000.00   OTHER _____

_Check YES only if demanded in complaint_
JURY DEMAND: ☒ YES ☐ NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

JUDGE _____   DOCKET NUMBER _____

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

(PLACE AN x IN ONE BOX ONLY)                                    **ORIGIN**

☒ 1 Original          ☐ 2a. Removed from   ☐ 3 Remanded from   ☐ 4 Reinstated or   ☐ 5 Transferred from   ☐ 6 Multidistrict   ☐ 7 Appeal to District
   Proceeding              State Court          Appellate Court      Reopened            (Specify District)      Litigation           Judge from
                      ☐ 2b. Removed from State Court                                                                                  Magistrate Judge
                            AND at least one party is a pro se litigant                                                               Judgment

(PLACE AN x IN ONE BOX ONLY)          **BASIS OF JURISDICTION**                    *IF DIVERSITY, INDICATE*
                                                                                   *CITIZENSHIP BELOW.*
☐ 1 U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT   ☐ 3 FEDERAL QUESTION   ☒ 4 DIVERSITY    *(28 USC 1332, 1441)*
                                             (U.S. NOT A PARTY)

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF DEF | | PTF DEF | | PTF DEF |
|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1   [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3   [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5   [ ] 5 |
| CITIZEN OF ANOTHER STATE | ☒ 2   [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4   ☒ 4 | FOREIGN NATION | [ ] 6   [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Kara and Eliseo Garza
6105 South Parker Road
Apt 8302
Centennial, CO 80016

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

BAUSCH & LOMB INCORPORATED

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE
RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:   THIS ACTION SHOULD BE ASSIGNED TO:   ☐ WHITE PLAINS   ☒ FOLEY SQUARE
             (DO NOT check either box if this a PRISONER PETITION.)

| DATE | SIGNATURE OF ATTORNEY OF RECORD | ADMITTED TO PRACTICE IN THIS DISTRICT |
|---|---|---|
| April 30, 2008   X | *(signature)* | [ ] NO |
| | | [x] YES (DATE ADMITTED Mo. 03___ Yr. 1992 ) |
| RECEIPT # | ANDREW G. FINKELSTEIN, ESQ. | Attorney Bar Code # AF 1070 |

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J Michael McMahon, Clerk of Court by _____ Deputy Clerk DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

File #238118-06/seh

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---------------------------------------------------x

KARA GARZA and ELISEO GARZA,

                            Plaintiffs,

        -against-

BAUSCH & LOMB INCORPORATED,

                            Defendant.

---------------------------------------------------x

**COMPLAINT**

Plaintiffs Demand
Trial by Jury

        Plaintiffs, by attorneys, FINKELSTEIN & PARTNERS, LLP, as and for the Verified Complaint herein allege upon information and belief the following:

<u>**STATEMENT OF THE CASE**</u>

        1.     This is an action to recover damages for personal injuries sustained by Plaintiff, KARA GARZA, (hereinafter "Plaintiff"), as the direct and proximate result of the negligent and wrongful conduct of Defendant, BAUSCH & LOMB INCORPORATED, in connection with the designing, developing, testing, packaging, manufacturing, distributing, labeling, advertising, marketing, promoting and/or sale of Bausch & Lomb ReNu with MoistureLoc Multi-Purpose Solution (hereinafter referred to as "ReNu with MoistureLoc" or the "subject product").

        2.     At all times material hereto, ReNu with MoistureLoc was designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled, and/or sold by Defendant.

<u>**PARTIES AND JURISDICTION**</u>

        3.     Jurisdiction exists as against Defendant, BAUSCH & LOMB INCORPORATED, pursuant to:

(a) 28 U.S.C. Section 1332, in that Plaintiffs, KARA GARZA and ELISEO GARZA, were and still are citizens and residents of the State of Colorado, and Defendant, BAUSCH & LOMB INCORPORATED, is incorporated in business in the State of New York and maintains its principal place of business in the State of New York, and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

(b) 28 U.S.C. Section 1391, in that jurisdiction is founded only on diversity of citizenship, and this Judicial District is a judicial district in which the sole Defendant, BAUSCH & LOMB INCORPORATED, resides.

4.    At all times hereinafter mentioned, upon information and belief, Defendant, BAUSCH & LOMB INCORPORATED, (hereinafter "Defendant"), was and still is a domestic corporation organized under the laws of the State of New York.

5.    At all times hereinafter mentioned, upon information and belief, Defendant was and still is a domestic corporation authorized to do business in the State of New York.

6.    At all times hereinafter mentioned, upon information and belief, Defendant was and still is a business entity actually doing business in the State of New York.

7.    As a direct and proximate result of Defendant placing the subject product into the stream of commerce, Plaintiff has suffered and will continue to suffer injuries including, without limitation, physical, mental and economic loss, pain and suffering, and will continue to experience such injuries indefinitely.

8.    Plaintiff has incurred and will incur significant medical, hospital, monitoring, rehabilitative and pharmaceutical expenses, and lost wages.

9.    At all times hereinafter mentioned, upon information and belief, Defendant was present and doing business in the State of New York.

2

10.     At all times hereinafter mentioned, upon information and belief, Defendant transacted, solicited and conducted business in the State of New York and derived substantial revenue from such business.

11.     At all times hereinafter mentioned, upon information and belief, Defendant expected or should have expected that its acts would have consequences in the State of New York.

## PARTIES

13.     At all times hereinafter mentioned, Plaintiffs did and still reside in the County of Arapahoe, State of Colorado. As a direct and proximate result of Plaintiff's use of ReNu with MoistureLoc, Plaintiff was diagnosed with fungal Keratitis, photophobia, resulting in corneal abrasions. To date, Plaintiff still has significant vision problems.

14.     Defendant is a corporation organized under the laws of the State of New York with its principal place of business located at One Bausch & Lomb Place, Rochester, New York 14604-2701.

## FACTUAL ALLEGATIONS

15.     Defendant designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled and/or sold the contact lens eye care product known as ReNu with MoistureLoc.

16.     Defendant claims on its website that the subject product is a "multi-purpose solution for cleaning, rinsing, disinfecting and storing your soft contact lenses" and that "ReNu Multi-Purpose Solution makes daily lens care easy."

3

17.    In or about February 2006, Defendant suspended sales of the subject product in Asia amidst an increase of incidents of fusarium keratitis and requests by Asian officials to pull the subject product from the shelves.

18.    Fungal keratitis is a serious eye infection that can develop through the whole depth of the cornea. Symptoms of fungal keratitis include eye pain, eye discomfort, decrease in vision and light hypersensitivity. The infection can require prolonged drug therapy with antifungal medication. Those infected with fungal keratitis who do not receive or who do not respond to medical treatment may experience significant loss of vision and will usually require surgical intervention, including corneal transplantation.

19.    An increase in incidents of patients diagnosed with fusarium keratitis was reported among contact lens users in Asia beginning in November 2005. Singapore health officials noticed an increase in reports of infection in January and discovered 39 cases involving contact lens users from 2005 to February 2006. Cases of infection involving contact lens users have also been reported in Malaysia and Hong Kong.

20.    According to a Reuters article dated March 31, 2006, authorities in Singapore linked the incidents of fusarium keratitis to the subject product.

21.    Hong Kong officials specifically asked Defendant to pull the subject product from the shelves.

22.    According to a Morningstar article dated March 31, 2006, the subject product is the only lens care solution to have been identified by Asian officials as the cause of the increase in incidents of fusarium Keratitis, and "no other contact-lens solution has been singled out."

23.    In response to the subject product being singled out as the cause for the increase in incidents of fusarium Keratitis in Asia and requests by Asian officials to pull the product from

the shelves, Defendant suspended sales of the subject product in Hong Kong and Singapore in February 2006.

24.    Despite the fact that Defendant suspended sales of the subject product in February 2006, Singapore's Ministry of Health issued a press release in April 2006, stating in part the following:

> There has been an additional 36 cases of fungal corneal infection reported since the last update in late February (39 cases). In total, 75 cases of fungal corneal infection (which tested positive for Fusarium) with a history of contact lens use have been reported for the period 1 Nov 2004 to 12 April 2006. This compares with two reported cases from 1 Jan to 31 Oct 2004.

> In view of the potentially serious adverse visual consequences of fungal corneal infection, the Ministry of Health had on 17 Feb 2006 advised all contact lens users as a precautionary measure to discontinue the use of Bausch and Lomb's ReNu multipurpose contact lens solution for the time being, until the causes behind this recent increase in infections can be more clearly ascertained. Bausch & Lomb (S) Pte Ltd (B & L) has since voluntarily suspended sales of its ReNu multipurpose solution.

> * * *

> A comprehensive case-control study (comparing contact lens users with infection and contact lens users without corneal infection) was undertaken in Feb-Mar 2006 to investigate risk factors for the spike in fungal corneal infection. The study found a strong association between corneal infection and the use of ReNu solution. This association remained strong even after taking into consideration socio-demographic, lens, hygiene and environmental factors. The findings are also consistent with recent observations made in the US and Hong Kong.

25.    On March 8, 2006, the Centers for Disease Control and Prevention (the "CDC") in the United States received a report from an ophthalmologist in New Jersey regarding three patients, all soft-contact lens users, who had been diagnosed with fusarium keratitis.

26.    According to the CDC, in addition to those incidents reported by the New Jersey ophthalmologist, "initial contact with several corneal disease specialty centers in the United States have also seen recent increases in fusarium keratitis."

5

27.    In a report dated April 10, 2006, entitled "Fusarium Keratitis – Multiple/States, 2006," the CDC stated that as of April 9, 2006, 109 cases of suspected fusarium keratitis are under investigation by CDC and public health authorities in 17 states of the U.S., including California, Connecticut, Florida, Georgia, Iowa, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, North Dakota, Ohio, Pennsylvania, Tennessee, Texas and Vermont.

28.    Out of the 109 cases, 30 have been fully investigated.  Out of the 30 fully investigated cases, 28 of the patients wore soft contact lenses.  Out of those 28, a staggering 26 patients used the subject product.

29.    The subject product, upon information and belief, contained a defect in its chemical composition which is either inherent to the subject product itself, or results from contaminants found in the facility at which it is manufactured.

30.    On or about April 10, 206, the U.S. Food and Drug Administration ("FDA") and the CDC issued a joint press release, "alerting health case professionals and their patients who wear soft contact lenses to an increasing number of reports in the United States of rare but serious fungal infections in the eye that can cause permanent loss of sight." The press release indicated further that, "some patients have reported a significant loss of vision, resulting in the need for a corneal transplant." The FDA indicated that a fungus called *fusarium* was identified as the cause of the reported infections.

31.    Thereafter, Defendant announced the suspension of shipments of the subject product to retailer in the United States due to reports of fungal keratitis infections in contact lens wearers who used the subject product.

32.    On or about April 13, 2006, Defendant requested that U.S. retailers remove ReNu with MoistureLoc from their shelves, and recommended that consumers switch to another lens

6

care solution, until the conclusion of the investigation into reports of fungal keratitis infections among contact lens wearers in the United States.

33.    The FDA issued a statement on or about April 14, 2006, supporting Defendant's decision to withdraw the subject product from the market during the pending investigation.

34.    Plaintiff used the subject product for its intended purpose.

35.    As a direct and proximate result of Plaintiff's use of ReNu with MoistureLoc, Plaintiff was diagnosed with fungal Keratitis, photophobia, resulting in corneal abrasions. To date, Plaintiff still has significant vision problems with Plaintiff's eyes.

36.    At all times relevant herein, Plaintiff was unaware of the serious side effects and dangerous properties of the subject product as set forth herein.

37.    Had Defendant herein properly disclosed the risks associated with the subject product, Plaintiff would not have used it.

38.    As alleged herein, as a direct and proximate result of Defendant's negligence and wrongful conduct, and the unreasonable dangerous and defective characteristics of the subject product, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering, including but not limited to scarring on the cornea, photophobia and significant vision problems in Plaintiff's eyes. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

### AS AND FOR A FIRST CAUSE OF
### ACTION AGAINST THE DEFENDANT

39.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

40.    At all times material hereto, Defendant had a duty to exercise reasonable care to consumers, including Plaintiff, in the design, development, manufacture, testing, inspection, packaging, promotion marketing, distribution, labeling and/or sale of the subject product.

41.    Defendant breached its duty of reasonable care of to Plaintiff in that Defendant negligently designed, developed, manufactured, tested, inspected, packages, promoted, marketed, distributed, labeled, and/or sold the subject product.

42.    Plaintiff's injuries and damages, as alleged herein, were and are the direct and proximate result of the carelessness and negligence of Defendant.

43.    Defendant knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendant's failure to exercise reasonable and ordinary care.

44.    The injuries sustained by Plaintiff were caused by or were contributed to by Defendant's negligence, recklessness, gross negligence, wantonness, willfulness, and conscious and callous disregard for the safety of the consumers and the public, including Plaintiff, on the part of Defendant in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of the subject product as being safe and effective for the purposes intended and by inducing the public, including Plaintiff, to believe that the subject product was safe and effective for its intended purposes.

45.    As a proximate result of the aforementioned negligence of Defendant, Plaintiff suffered personal injuries and harm, was required to pay for necessary healthcare, attention and services, along with incidental and related expenses, require medical monitoring and will be

8

required to pay for additional necessary healthcare, attention and services, along with additional incidental and related expenses to monitor Plaintiff's condition.

46.    The conduct of Defendant was so willful, wanton, malicious, reckless and in disregard for the consequences as to reveal a conscious indifference to the clear risk of blindness, death or serious bodily injury, and merits the imposition of punitive damages.

47.    As alleged herein, as a direct and proximate result of Defendant's negligence and wrongful conduct, and the unreasonable dangerous and defective characteristics of the subject product, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering, including but not limited to scarring on the cornea, photophobia and significant vision problems in Plaintiff's eyes. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

### AS AND FOR A SECOND CAUSE OF
### ACTION AGAINST THE DEFENDANT

48.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

49.    Defendant designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled and/or sold the subject product in a condition which rendered it unreasonably dangerous due to its propensity to cause fungal eye infections.

50.    The subject product manufactured and/or supplied by Defendant was defective in manufacture or construction in that, when it left the hands of Defendant, it deviated in a material

way from Defendant's manufacturing performance standards and/or it differed from otherwise identical products manufactured to the same design formula.

51.    The subject product manufactured and/or supplied by Defendant was defective in design in that, when it left the hands of Defendant, the foreseeable risks exceeded the benefits associated with the design and/or formulation.

52.    Alternatively, the subject product supplied by Defendant was defective in design in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

53.    The subject product was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert consumers, including Plaintiff, of the dangerous risk and reactions associated with the subject product, notwithstanding Defendant's knowledge of such risks and reactions.

54.    The aforementioned defects existed when Defendant placed the subject product into the stream of commerce.

55.    Plaintiff's injuries and damages alleged herein were a proximate result of these defects.

56.    By engaging in the aforesaid conduct, Defendant is strictly liable to Plaintiff.

57.    As alleged herein, as a direct and proximate result of Defendant's negligence and wrongful conduct, and the unreasonable dangerous and defective characteristics of the subject product, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering, including but not limited to scarring on the cornea, photophobia and significant vision problems in Plaintiff's eyes. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has

10

lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

## AS AND FOR A THIRD CAUSE OF
## ACTION AGAINST THE DEFENDANT

58.     Plaintiffs repeat and reiterate the allegations previously set forth herein.

59.     Defendant expressly warranted to Plaintiff that the subject product was safe and fit for use by consumers and users for its intended purpose, that is was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested and fit for its intended use.

60.     At the time of the making of the express warranties, Defendant knew or should have known of the purpose for which the subject product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.

61.     At the time of the making of the express warranties, Defendant knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that the subject product was not safe and fit for its intended use and, in fact, produces serious injuries to the user.

62.     Plaintiff purchased and used the subject product for its intended purpose.

63.     Plaintiff relied on Defendant's express warranties.

64.     Defendant breached said express warranties in that the subject product was not safe and fit for its intended use and, in fact, causes debilitating and potentially lethal side effects.

65.     As alleged herein, as a direct and proximate result of Defendant's breach of express warranty, Plaintiff suffered severe and permanent physical injuries and has endured

11

substantial pain and suffering, including but not limited to scarring on the cornea, photophobia and significant vision problems in Plaintiff's eyes. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

## AS AND FOR A FOURTH CAUSE OF
## ACTION AGAINST THE DEFENDANT

66.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

67.    Defendant designed, manufactured, marketed, distributed, supplied and sold the subject product.

68.    At the time that Defendant manufactured, marketed, distributed, supplied, and/or sold the subject product, it knew of the use for which the subject product was intended and impliedly warranted it to be of merchantable quality and safe and fit for such use. Plaintiff purchased and used the subject product for its intended purpose.

69.    Due to Defendant's wrongful conduct, as alleged herein, Plaintiff could not have known about the nature of the risks and side effects associated with the subject product until after Plaintiff used it.

70.    Contrary to the implied warranty for the subject product, the subject product was not of merchantable quality and was not safe or fit for its intended uses and purposes.

71.    As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering, including but not limited to scarring on the cornea, photophobia and significant vision

12

problems in Plaintiff's eyes. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant, as alleged herein.

### AS AND FOR A FIFTH CAUSE OF
### ACTION AGAINST THE DEFENDANT

72.   Plaintiffs repeat and reiterate the allegations previously set forth herein.

73.   Defendant falsely and fraudulently represented to the medical and healthcare community, and to Plaintiff and/or the FDA, and the public in general, that the subject product had been tested and was found to be safe and/or effective. The representations made by Defendant were, in fact, false.

74.   When said representations were made by Defendant, it knew those representations to be false and it willfully, wantonly, and recklessly disregarded whether the representations were true.

75.   These representations were made by Defendant with the intent of defrauding and deceiving Plaintiff, the public in general and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, dispense and/or purchase the subject product, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and the public in general.

13

76.    At the time the aforesaid representations were made by Defendant and at the time Plaintiff used the subject product, Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

77.    In reliance upon said representations, Plaintiff was induced to and did use the subject product, thereby sustaining severe and permanent personal injuries.

78.    Defendant knew and was aware or should have been aware that the subject product had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

79.    Defendant knew or should have known that the subject product had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or downplayed warnings.

80.    Defendant brought the subject product to the market, and acted fraudulently, wantonly and maliciously to the detriment of Plaintiff.

81.    As a result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering including but not limited to photophobia, resulting in corneal abrasions and significant vision problems in Plaintiff's eyes. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant herein.

## AS AND FOR A SIXTH CAUSE OF
## ACTION AGAINST THE DEFENDANT

82.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

83.    At all times during the course of dealing between Defendant, Plaintiff's healthcare providers, and/or the FDA, Defendant misrepresented the safety of the subject product for its intended use.

84.    Defendant knew or was reckless in not known that its representations were false.

85.    In representations to Plaintiff's healthcare providers, and/or the FDA, Defendant fraudulently concealed and intentionally omitted material information, including but not limited to, the fact that:

a)    The subject product was not as safe as other similar products;

b)    The subject product was defective, and that it caused dangerous side effects;

c)    The subject product was manufactured negligently;

d)    The subject product was manufactured defectively;

e)    The subject product was manufactured improperly;

f)    The subject product was designed negligently;

g)    The subject product was designed defectively; and

h)    The subject product was designed improperly.

86.    Defendant was under a duty to disclose to Plaintiff's healthcare providers and/or the FDA the defective nature of the subject product.

87.    Defendant had sole access to material facts concerning the defective nature of the subject product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the subject product, including Plaintiff, in particular.

15

88.    Defendant's concealment and omissions of material facts concerning, inter alia, the safety of the subject product were made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff and Plaintiff's physicians, hospitals and healthcare providers into reliance, continued use of the subject product, and actions thereon, and to cause then to purchase, dispense and/or use the subject product.

89.    Defendant knew that Plaintiff's healthcare providers and/or the FDA had no way to determine the truth behind Defendant's concealment and omissions, as set forth herein.

90.    Plaintiff's doctors, healthcare providers, and/or hospitals, reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendant.

91.    As a result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering including but not limited to photophobia, resulting in corneal abrasions and significant vision problems in Plaintiff's eyes. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant herein.

### AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST THE DEFENDANT

92.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

16

93.    Defendant had a duty to represent to the medical and healthcare community, and to Plaintiff, the FDA and the public in general that the subject product, has been tested and found to be safe and effective for its intended purpose.

94.    The representations made by Defendant were, in fact, false.

95.    Defendant failed to exercise ordinary care in the representation of the subject product, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce in that Defendant negligently misrepresented the subject product's high risk of unreasonable, dangerous side effects.

96.    Defendant breached its duty in representing the subject product's serious side effects to the medical and healthcare community, to Plaintiff, the FDA and the public in general.

97.    As a result of the foregoing acts and omissions, Plaintiff suffered severe and permanent physical injuries and has endured substantial pain and suffering including but not limited to photophobia, resulting in corneal abrasions and significant vision problems in Plaintiff's eyes. Plaintiff has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from Defendant herein.

## AS AND FOR A EIGHTH CAUSE OF
## ACTION AGAINST THE DEFENDANT

98.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

99.    Defendant engaged in commercial conduct by selling the subject product.

17

100.    Defendant misrepresented and omitted material information regarding the subject product by failing to disclose known risks.

101.    Defendant's misrepresentations and concealment of material facts constitute unconscionable commercial practice, deception, fraud, false pretenses, misrepresentations, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and advertisement of the subject product, in violation of Colo. Rev. Stat. § 6-1-105.

102.    Colorado and all other states have enacted statutes to protect consumers from unfair, deceptive, fraudulent, and unconscionable trade and business practices. Defendant violated these statutes by knowingly and falsely representing that the subject product was safe to use for the purpose for which it was intended, when Defendant knew it was defective and dangerous, and by other acts alleged herein.

103.    Defendant engaged in the deceptive acts and practices alleged herein in order to sell the subject product to the public, including Plaintiff.

104.    As a direct and proximate result of Defendant's violations Colo. Rev. Stat. § 6-1-105, Plaintiff has suffered actual damages, and, in addition, Plaintiff seeks three times the amount of actual damages sustained, together with reasonable attorney's fees and costs.

### AS AND FOR A NINTH CAUSE OF
### ACTION AGAINST THE DEFENDANT

105.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

106.    That as a result of the aforementioned, this Plaintiff, ELISEO GARZA, the lawful wedded spouse of the Plaintiff in the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action, has and will suffer the loss of impairment of the spouse's services,

18

society, and consortium, all to the damage of this Plaintiff in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter.

107.    By reason of the foregoing, this Plaintiff was damaged in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and in addition, this Plaintiff seeks punitive and exemplary damages against Defendant in an amount to be determined upon the trial of this matter.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

(1)    The sum of $100,000,000.00 on the First Cause of Action, together with punitive damages and exemplary damages in an amount to be determined upon the trial of this Action;

(2)    The sum of $100,000,000.00 on the Second Cause of Action, together with punitive damages and exemplary damages in an amount to be determined upon the trial of this Action;

(3)    The sum of $100,000,000.00 on the Third Cause of Action, together with punitive damages and exemplary damages in an amount to be determined upon the trial of this Action;

(4)    The sum of $100,000,000.00 on the Fourth Cause of Action, together with punitive damages and exemplary damages in an amount to be determined upon the trial of this Action;

(5)    The sum of $100,000,000.00 on the Fourth Cause of Action, together with punitive damages and exemplary damages in an amount to be determined upon the trial of this Action;

(6)    The sum of $100,000,000.00 on the Fourth Cause of Action, together with punitive damages and exemplary damages in an amount to be determined upon the trial of this Action;

(7)    The sum of $100,000,000.00 on the Fourth Cause of Action, together with punitive damages and exemplary damages in an amount to be determined upon the trial of this Action;

(8)    Actual damages sustained on the Eighth Cause of Action, and, in addition, an increase of the award of actual damages to an amount not to exceed three times the actual damages; and

(9)    The sum of $100,000,000.00 on the Sixth Cause of Action, together with punitive damages and exemplary damages in an amount to be determined upon the trial of this Action, together with costs and reasonable attorneys fees.

Dated: Newburgh, NY
       May 1, 2008

FINKELSTEIN & PARTNERS, LLP
Attorneys for Plaintiffs
436 Robinson Avenue
Newburgh, New York  12550
(866) 909-8678

By:_____
     Andrew G. Finkelstein, Esq.


TO:    BAUSCH & LOMB INCORPORATED
       Defendant
       c/o Secretary of State
       41 State Street
       Albany, New York  12231

20